# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

KATHY JO BERRYMAN,

      **Plaintiff,**

      **v.**                                          **Case No. 20-CV-692-SCD**

ANDREW M. SAUL,
**Commissioner of Social Security,**

      **Defendant.**

## DECISION AND ORDER

Kathy Jo Berryman seeks social security disability benefits based on allegedly disabling pain and fatigue stemming primarily from fibromyalgia, depression, and anxiety. Following a hearing, an administrative law judge determined that Berryman was not disabled because she could still work with certain physical and mental limitations. Berryman now seeks judicial review of that decision, arguing that the ALJ erred in weighing the opinion of the state agency's examining psychologist, not deferring to the opinions of her treating rheumatologist, and not accommodating her difficulties with concentration, persistence, and work pace.

I agree that the ALJ committed reversible error in evaluating the opinions of the examining psychologist and Berryman's rheumatologist and that this error may call into question the ALJ's finding that Berryman could still work. However, because the record does not require a finding of disability, I will reverse the decision denying Berryman disability benefits and remand the matter for further proceedings, rather than order an award of benefits.

# BACKGROUND

Berryman filed this action on May 5, 2020, seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was randomly assigned to me, and all parties subsequently consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 5, 8. It is now fully briefed and ready for disposition. *See* ECF Nos. 20, 30, 37.

## I.     Procedural History

Berryman applied for social security disability benefits in March 2016, alleging that she became disabled on February 19, 2016, when she was forty-one years old. R. 13, 216–23.[1] Her date last insured is December 31, 2020. R. 15. Berryman asserted that she was unable to work due to neck and lower back pain, fibromyalgia and fatigue, myofascial pain syndrome, depression, anxiety, and sleep apnea. R. 245.

Berryman's applications were first reviewed at the state-agency level by the Wisconsin Disability Determination Bureau. *See* R. 76–138. At the initial level of review, the state-agency physician charged with reviewing the medical evidence of record opined that Berryman could perform light work[2] with certain postural limitations. R. 86–87, 90, 99–100, 103. Based on his review of the record, the state-agency psychologist opined that Berryman had a "mild" limitation in maintaining concentration, persistence, or pace. R. 83, 96. He further opined

---

[1] The transcript is filed on the docket at ECF No. 18-2 to ECF No. 18-27.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

that Berryman could perform "simple and detailed tasks" but that she was "limited to only brief and uncomplicated workplace interactions, with only routine, predictable work stressors." R. 87–88, 100–01. Based on those findings, the state agency determined that Berryman was not disabled and denied her applications. *See* R. 77, 90, 103.

After Berryman requested reconsideration, R. 143–44, the state agency referred her for a psychological consultative examination, R. 286. Frank J. Elmudesi, PsyD, examined Berryman in March 2017 and prepared a report of his findings. *See* R. 1028–32. Dr. Elmudesi noted that Berryman "described her mood as 'mostly feel depressed and have a lot of anxiety and worried thoughts.'" R. 1029. He further noted that Berryman "stated she has difficulty with concentration . . . at times and is often prone to fatigue and low energy." *Id.* According to Dr. Elmudesi, Berryman's "[a]ffect was consistent with prevailing mood." *Id.* On the concentration portion of the mental-status exam, Berryman "was unable to perform serial 7's but could perform serial threes from 20." R. 1030. She also could "follow a three-step command" and correctly spelled the word "world" backwards. *Id.* Dr. Elmudesi noted that Berryman reported "having problems with concentration but has marked difficulty being able to maintain a regular work pace primarily due to pain and tendencies toward fatigue." R. 1031. He believed it likely, "given [Berryman's] symptoms presentation," that "she continues to have a moderated to marked limitation in this area." *Id.*

In his exam summary, Dr. Elmudesi wrote that Berryman "possesses sign[s] and symptoms consistent with chronic depressive symptoms which appear exacerbated by her health and pain issues." R. 1031. He continued, "It is important to stress that her ability to maintain concentration and attention and a consistent work pace is likely to be highly impaired when she has an exacerbation of pain symptoms related to her health issues." *Id.* As

for Berryman's work capacity, Dr. Elmudesi opined that she "is expected to have difficulty being able to perform job related duties in a regular-routine full-time fashion at this time due to primarily medical symptoms." *Id.*

Thereafter, Berryman's applications were denied at the reconsideration level. *See* R. 105–38. Like the state-agency physician at the initial level of review, the state-agency physician at the reconsideration level opined that Berryman could perform light work with certain postural limitations. R. 113–15, 119, 129–31, 135. However, the state-agency psychologist at the reconsideration level, David L. Biscardi, PhD, thought that Berryman was slightly more impaired mentally than did the initial reviewing psychologist. Dr. Biscardi indicated that Berryman had a "moderate" limitation in her ability to concentrate, persist, or maintain pace. R. 111, 127. He identified four specific areas on his mental residual functional capacity assessment form: the ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. R. 116–18, 132–34. Under the "Additional Explanation" portion of the form, Dr. Biscardi wrote: "[Claimant] retains the capacity to understand, remember, carry out and sustain performance of 1–3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities." R. 117, 133.

After the Commissioner denied Berryman's applications at the state-agency level, Berryman (along with her attorney) appeared in person for a hearing before ALJ Wayne L. Ritter on September 18, 2018. *See* R. 31–75. Berryman testified that she was unable to work due to daily pain and fatigue stemming primarily from fibromyalgia, which she started receiving treatment for in 2009. R. 39–43. Before and after her fibromyalgia diagnosis, Berryman worked for several years at a veterinary clinic. R. 48–50. However, she was terminated in 2014 when the clinic refused to hold her position open when she had to miss time following a car accident. R. 59. Berryman made several attempts to return to work, but each time she quit because she was unable to keep up physically; she last worked in 2017 as a part-time light cleaner. R. 44–48, 58–59, 62–63. Berryman testified that she also suffered from severe depression and anxiety, for which she attended therapy and was prescribed medication. R. 55–57, 59–60. However, she had never been hospitalized overnight for mental-health issues. R. 56–57. Berryman stated, "I would love to work, but it's just there's so many things that go with each and every job, and I just can't do each and everything that each job requires anymore. And I'm in pain every day, and I just can't do it anymore." R. 60–61.

Leslie Goldsmith testified at the hearing as a vocational expert. *See* R. 63–73. According to Goldsmith, a hypothetical person with Berryman's age, education, and work experience could not perform any of her past relevant jobs if she were limited to a restricted range of light work. R. 64–69. That person could, however, perform other jobs, such as an office assistant or office helper, a mail clerk, or a sandwich or deli clerk. R. 67–69. Goldsmith testified that no jobs would be available if the person had more than one unexcused absence per month, required five- to ten-minute breaks every hour, or was off task more than ten percent of the workday. R. 71–73.

On January 14, 2019, the ALJ issued a written decision determining that Berryman was not disabled and denying benefits. R. 10–30. The Social Security Administration's Appeals Council subsequently denied Berryman's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). This action followed.

## II. The ALJ's Decision

To be considered disabled under the Social Security Act, Berryman had to prove that she was "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The social security regulations set out a five-step sequential evaluation process to determine disability status. *See* 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Berryman had the burden of proof at each of the first four steps; the burden shifted to the Commissioner at the fifth, and final, step. *See Due v. Massanari*, 14 F. App'x 659, 664 (7th Cir. 2001) (citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).

Applying this standard five-step process, the ALJ here concluded that Berryman was not disabled. The ALJ determined at step one that Berryman had not engaged in substantial gainful activity since February 19, 2016, her alleged onset date. R. 15. At step two, the ALJ found that Berryman had four "severe"[3] impairments: fibromyalgia, migraines, depressive disorder, and anxiety disorder. R. 16. The ALJ determined at step three that Berryman's impairments, alone or in combination, didn't meet or equal the severity of a presumptively

---

[3] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

disabling impairment. R. 16–18. With respect to her mental impairments, the ALJ found that Berryman had a "moderate" limitation in concentrating, persisting, or maintaining pace. R. 17–18.[4]

The ALJ next assessed Berryman's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Berryman could perform light work with certain postural limitations. R. 18. As for her mental functioning, the ALJ limited Berryman to "simple, routine and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional work place changes and occasional interaction with the public, coworkers and supervisors." *Id.* In assessing this RFC, the ALJ considered the medical evidence, Berryman's subjective allegations, and the medical opinion evidence and prior administrative medical findings. *See* R. 18–23.

With respect to the opinion evidence, the ALJ first considered the opinions of the state-agency medical consultants who reviewed the record at the initial and reconsideration levels and opined that Berryman could perform light work with postural limitations and mild to moderate functional limitations due to mental impairments. R. 22 (citing Exhibits 2A–6A). The ALJ assigned those opinions "great weight" because they were "generally consistent with the evidence of record as a whole." R. 22.

The ALJ next considered the opinions of Berryman's rheumatologist, Farzod Mahmood, MD. Dr. Mahmood began treating Berryman in April 2014, seeing her every three

---

[4] The ALJ evaluated Berryman's mental impairments under the new mental impairment regulations, which became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). According to these new regulations, the adjudicator "evaluates the effects of [a claimant's] mental disorder in each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2). A claimant has moderate limitation in a functional area if her "functioning in [that] area independently, appropriately, effectively, and on a sustained basis is fair." *Id.*, § 12.00(F)(2)(c).

to six months. R. 977, 983. On August 31, 2016, Dr. Mahmood completed a medical source statement in which he opined, among other things, that Berryman could occasionally lift and carry ten pounds, frequently lift and carry five pounds, stand and walk for no more than two hours during an eight-hour workday, and sit for no more than two hours during a workday. R. 978. Dr. Mahmood further opined that Berryman would miss more than three days of work per month due to "bad days," that Berryman could participate in work activities for only one to two hours daily per week, and that Berryman would need an unscheduled, five- to ten-minute break every hour. R. 979–80, 986. As for her mental functioning, Dr. Mahmood opined that Berryman had a "moderate" limitation in her ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace. R. 988.

The ALJ assigned "little weight" to the opinions contained in Dr. Mahmood's medical source statement. R. 22–23 (citing Exhibits 7F–15F). According to the ALJ, Dr. Mahmood's opinions were "inconsistent with the medical evidence of record as a whole." R. 22. The ALJ noted that Berryman "reported some symptom improvement with medications, and physical examinations throughout generally showed unremarkable findings." R. 22–23. The ALJ further noted that "[b]etter sleep and more exercise was emphasized by [Berryman's] treatment provider along with compliance with her medication regimen." R. 23.

Finally, the ALJ considered the opinion of Dr. Elmudesi, the state agency's examining psychologist who opined (among other things) that Berryman would have difficulty performing job-related duties in a regular, routine, full-time fashion due to primarily medical symptoms and that Berryman's ability to maintain concentration, attention, and a consistent work pace would likely be highly impaired when she has an exacerbation of pain symptoms related to her health issues. R. 23 (citing Exhibit 10F/4). The ALJ assigned "little weight" to

Dr. Elmudesi's opinion "because it appears based on [Berryman's] subjective complaints about her <u>physical</u> impairments, which Dr. Elmudesi is not trained to assess." R. 23. Also, according to the ALJ, "the alleged severity of [Berryman's] physical impairments is not supported by [Dr. Elmudesi's] findings and the evidence of record as a whole." *Id.* The ALJ further noted that Berryman "reported no hospitalizations due to mental health," that Berryman's current treatment consisted of "only psychotropic medications," and that Berryman's mental-status examination "was generally unremarkable." *Id.*

Continuing the sequential evaluation process, the ALJ determined at step four that Berryman was unable to perform her past relevant work as a veterinary assistant, a packager, or an assembler. R. 23. At step five, the ALJ determined that, given her age, education, work experience, and RFC, Berryman could perform other jobs (e.g., an office helper, a mail clerk, or a food preparer) that exist in significant numbers in the national economy. R. 24–25. Based on that finding, the ALJ determined that Berryman had not been under a disability from her alleged onset date through the date of the decision. R. 25.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings."

*Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Berryman contends that the ALJ erred in weighing the medical opinions of the state agency's consultative examiner, not deferring to the opinion of his treating rheumatologist, and not accommodating her moderate limitation in concentration, persistence, or pace.

### I.     Consultative Examiner

Berryman first argues that the ALJ improperly evaluated the opinion of the state agency's examining psychologist, Dr. Elmudesi. She challenges each of the reasons the ALJ provided for discounting Dr. Elmudesi's opinion and maintains that the ALJ should have recontacted Dr. Elmudesi if he was uncertain about the basis for Dr. Elmudesi's opinion that Berryman would have trouble with concentration. According to Berryman, Dr. Elmudesi's opinion—that Berryman would have difficulty performing job-related duties in a regular, routine, and full-time fashion and that her ability to maintain concentration, attention, and a consistent work pace likely would be highly impaired when she has an exacerbation of pain symptoms related to her health issues—is amply supported by the record and required a more restrictive RFC. *See* ECF No. 20 at 10–17.

"As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). "[B]ut *rejecting* the opinion of an agency's doctor

that supports a disability finding is 'unusual' and 'can be expected to cause a reviewing court to take notice and await a good explanation.'" *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (quoting *Beardsley*, 758 F.3d at 839). "Generally 'a contradictory opinion of a non-examining physician does not, by itself, suffice to reject 'an examining physician's opinion.'" *Thompson v. Berryhill*, 722 F. App'x 573, 581 (7th Cir. 2018 (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

I agree with Berryman that the ALJ here did not provide a good explanation for rejecting Dr. Elmudesi's opinion. The ALJ provided three reasons for assigning little weight to Dr. Elmudesi's opinion, none of which is a good reason alone or in combination. *First*, the ALJ assigned little weight to Dr. Elmudesi's opinion because it appeared to rely heavily on Berryman's subjective complaints about her physical impairments, which, according to the ALJ, were outside Dr. Elmudesi's area of expertise. R. 23. As the Commissioner points out, in *Rice v. Barnhart* the Seventh Circuit stated that "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to [a] citation of a claimant's subjective complaints." 384 F.3d 363, 371 (7th Cir. 2004); *see also Hermes v. Berryhill*, No. 16-C-1281, 2017 U.S. Dist. LEXIS 213551, at *20 (E.D. Wis. Dec. 29, 2017) ("An ALJ may properly give less weight to a psychologist's opinion where it is based only on the claimant's self-reported symptoms, particularly where the psychologist gives an opinion after meeting the claimant only once and offers little analysis."). More recently, however, the Seventh Circuit seems to have walked back that statement, at least with respect to mental-health providers.

For example, in *Knapp v. Berryhill*, the court reversed an ALJ's decision that rejected a psychologist's opinion in part because it relied too heavily on the claimant's subjective reports,

finding that, "[b]y necessity . . . patients' self-reports often form the basis for psychological assessments." 741 F. App'x 324, 328 (7th Cir. 2018) (citing *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015)). The court has reached a similar conclusion in other recent cases. *See, e.g., Thompson v. Berryhill*, 722 F. App'x 573, 580–81 (7th Cir. 2018) ("The ALJ dismissed Dr. Link's report as 'not worthy of great weight' because it purportedly was based on Thompson's subjective complaints and was not 'independently verified.' But any psychological examination could be said to suffer from this criticism, and this statement ignores the professional status and judgment of the psychologist."). Thus, the ALJ erred in discounting Dr. Elmudesi's opinion for relying on Berryman subjective complaints. *See Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015) (noting that automatically giving zero weight to a report based on subjective statements is a "fundamental error").

Even if that were a valid reason for rejecting the opinion of the state agency's own examining psychologist, the record here does not support the ALJ's supposition that Dr. Elmudesi's opinion was based too strongly on Berryman's self-reported symptoms. Although Dr. Elmudesi considered Berryman's subjective complaints—as any psychologist would—he explicitly stated in his report that Berryman "possesses signs and symptoms" consistent with her health issues. R. 1031. For example, Dr. Elmudesi noted that Berryman's "[a]ffect was consistent with prevailing mood," which Berryman described as "depressed" with "a lot of anxiety." R. 1029. Dr. Elmudesi also noted that Berryman reported having problems with concentration and maintaining regular work pace due to pain and fatigue and that, "*given her symptoms presentation*," she likely "continues to have a moderate to marked limitation in this area." R. 1030 (emphasis added). Thus, Dr. Elmudesi explained that Berryman's subjective reports were corroborated by his own observations and mental-status findings.

Moreover, to the extent Dr. Elmudesi based his conclusion on "primarily medical symptoms," he never actually assessed Berryman's fibromyalgia or other physical impairments. Rather, he concluded that Berryman's mental impairments resulted in limitations—such as fatigue and difficulty concentrating and maintaining work pace—that appeared to be exacerbated by pain symptoms related to other health issues; he never stated that Berryman's physical impairments were the primary causes of her mental limitations. *See* R. 1031. The ALJ, however, failed to explain why Dr. Elmudesi—a psychologist paid by the state agency—was unqualified to assess cognitive limitations related in part to physically generated pain. Indeed, the Commissioner's own guidelines for evaluating fibromyalgia indicate that the agency "may request evidence from other medical sources, such as psychologists, . . . to evaluate the severity and functional effects of [fibromyalgia]." Social Security Ruling 12-2p, 2012 SSR LEXIS 1, at *11 (July 25, 2012).

*Second*, the ALJ determined that Dr. Elmudesi's opinion was inconsistent with the fact that Berryman had never been hospitalized for mental-health issues and that her treatment at the time consisted of "only psychotropic medications." R. 23. In *Grzegorski v. Saul*, I reversed an ALJ's decision that discredited the severity of a claimant's mental-health symptoms—primarily irritability—based in part on a lack of inpatient hospitalizations. Case No. 19-CV-1661, 2020 U.S. Dist. LEXIS 155646, at *9–10 (E.D. Wis. Aug. 26, 2020). The same reasoning applies here: the ALJ did not explain why the failure to seek admission to a hospital was inconsistent with Berryman's allegedly disabling fatigue and concentration issues brought on by depression and anxiety and likely worsened by physical pain—"the kinds of symptoms that would not require hospitalization in almost any instance." *Id.* at *10.

Similarly, the ALJ never explained how Dr. Elmudesi's opinion was inconsistent with Berryman's mental-health treatment. At the time of the consultative exam, Berryman was prescribed Zoloft, Buspar, and Clonazepam. R. 1028. At the hearing, Berryman reported taking Hydroxyzine (to combat her anxiety-induced, obsessive skin picking) and Effexor (for depression) and regularly seeing a psychologist and a psychiatrist. R. 55–57. No medical provider recommended more intense treatment or opined that this treatment was inconsistent with Berryman's alleged symptoms or Dr. Elmudesi's opinion. And the ALJ did not suggest what other treatment modalities he would expect Berryman to pursue.

*Finally*, according to the ALJ, Dr. Elmudesi's opinion was inconsistent with his own exam findings and the record as a whole, including "generally unremarkable" mental-status exams. R. 23. But during the consultative exam, Berryman demonstrated a depressed and anxious mood and some difficulty with memory, concentration, and abstract thought. R. 1029–31. Other treatment notes reference a depressed and anxious mood, suicidal thoughts, skin picking, and that Berryman's physical pain increased her mental-health symptoms. *See, e.g.*, R. 638, 647, 928, 1337, 1354, 1579, 1777, 1809, 1852, 1874, 1886, 2034. Given these findings, Dr. Elmudesi opined that Berryman would have difficulty keeping up with full-time job duties and that Berryman's ability to maintain concentration, attention, and a consistent work pace would likely be highly impaired during an exacerbation of physical symptoms. In other words, Dr. Elmudesi predicted, based on his observations and findings, how Berryman would function in a normal work setting. That opinion is not extreme, nor is it obviously inconsistent with the exam findings.

The Commissioner contends that Dr. Elmudesi's opinion was also inconsistent with his statement that Berryman's "mental status appeared within the average range." *See* ECF

15

No. 30 at 21 (quoting R. 1031). However, the ALJ never cited that vague observation in his decision, let alone as a basis for rejecting Dr. Elmudesi's opinion. *See generally* R. 13–25. Thus, I cannot consider it here. *See Steele*, 290 F.3d at 941 ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

Accordingly, Berryman has demonstrated that the ALJ failed to provide a valid explanation for rejecting the opinion of the state agency's own examining psychologist.

## II. Treating Rheumatologist

Berryman argues that the ALJ also improperly evaluated the opinions of his treating rheumatologist, Dr. Mahmood. She maintains that the ALJ failed to consider Dr. Mahmood's specialization and the length and frequency of his treatment. In addition, she believes the reasons the ALJ did provide for rejecting his opinions were insufficient. According to Berryman, nothing in the record meaningfully contradicts Dr. Mahmood's assessment that Berryman would frequently be absent from work, could work only one to two hours daily per week, and would need unscheduled breaks. Berryman therefore requests that she be awarded benefits based on the controlling, work-preclusive opinions of Dr. Mahmood. *See* ECF No. 20 at 17–24.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)); *see also* Social Security Ruling 96-2p, 1996 SSR LEXIS 9, at *1–

4 (July 2, 1996) (rescinded Mar. 27, 2017). An opinion that is not entitled to controlling weight need not be rejected. Instead, the opinion is entitled to deference, and the ALJ must weigh it using several factors, including the length, nature, and extent of the claimant's relationship with the treating source; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the treating source is a specialist. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1087 (E.D. Wis. 2009). Moreover, the ALJ must always give "good reasons" to support the weight he ultimately assigns to the treating source's opinion. *See* §§ 404.1527(c)(2), 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though Berryman has been treated for fibromyalgia since around 2009, *see* R. 40, she began seeing Dr. Mahmood in April 2014 following a motor vehicle accident that worsened her symptoms, R. 888–89. Since then, she has seen Dr. Mahmood every three to six months, for a total of at least eleven visits at the time of the ALJ's decision. *See* R. 888, 891, 892, 906, 910, 953, 973, 974, 977, 983, 1013, 1181, 1254. The ALJ noted that Dr. Mahmood was a "treatment provider," R. 22, but he didn't mention the length of the treatment relationship, the frequency of examination, or the nature and extent of the treatment relationship. *See* §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *see also* §§ 404.1527(c)(2)(ii), 916.927(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.").

Nor did the ALJ mention Dr. Mahmood's specialty as a rheumatologist, despite its ubiquitous reference in the record, including at the administrative hearing, *see* R. 35, 977. *See*

§§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). The Commissioner correctly points out "that ALJs are not required to explicitly weigh every single regulatory factor." ECF No. 30 at 10–12 (collecting cases). But ignoring the specialty of a treating source in cases like this one involving a chronic, sometimes-difficult-to-understand illness like fibromyalgia is especially problematic. *See Kozomara v. Saul*, Case No. 19-CV-955, 2020 U.S. Dist. LEXIS 70724, at *17–19 (E.D. Wis. Apr. 22, 2020) (reversing decision where ALJ failed to consider treating source's specialty as a rheumatologist in a case involving another chronic illness, rheumatoid arthritis).

Given that Dr. Mahmood was a specialist who examined and treated Berryman for several years, "the checklist required the administrative law judge to give great weight to [his] evidence unless it was seriously flawed." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (citing *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)). The ALJ assigned little weight to Dr. Mahmood's opinions because they were purportedly "inconsistent with the medical evidence of record as a whole." R. 22. However, the ALJ did not identify any substantial inconsistencies or contrary evidence showing that Dr. Mahmood's opinions were seriously flawed.

While the ALJ determined that Berryman "reported some symptom improvement with medications," he did not provide any examples, and his vague reference to his earlier discussion is unhelpful. *See id.* For instance, the ALJ noted that in January 2016 Berryman "reported improvement in burning pain with medications"; but he also noted that Berryman "continued to experience pain in the neck and shoulder area." R. 19–20 (citing Exhibits 4F/139–43; 6F). The ALJ also claimed that Berryman's symptoms improved following an

epidural steroid injection in May 2018; however, as the ALJ acknowledged, Berryman reported that the injection "only provided 30 percent relief." R. 21 (citing Exhibit 12F/527). In fact, at that same appointment, the doctor noted "minimal improvement in patient's function and ADL (activities of daily living) such as walking, sitting and doing work." R. 1560. The only other example of improvement mentioned by the ALJ is a treatment note from August 2018 referencing "some improvement with Effexor." R. 21 (citing Exhibit 13F/167). But that "improvement" was in relation to Berryman no longer "napping during the day," R. 1886—a symptom unrelated to Dr. Mahmood's assessment. Thus, the ALJ did not point to any long-lasting periods of improvement that seriously undermined Dr. Mahmood's opinions.

Furthermore, when weighing Dr. Mahmood's opinions, the ALJ placed too much emphasis on Berryman's so-called unremarkable physical examinations. The ALJ determined that Dr. Mahmood's opinions were inconsistent with the fact that she consistently had relatively benign exam findings, including full range of motion in her extremities, no tenderness, and no synovitis (inflammation that cause joint pain). *See* R. 20–23. But the ALJ did not explain *how* those findings were inconsistent with Dr. Mahmood's opinions, and the connection is not obvious. Dr. Mahmood did not claim that Berryman suffered from constant disabling pain. Rather, he indicated that Berryman's fibromyalgia-induced pain *and fatigue* rendered her incapable of keeping up with full-time employment, and his opinions—that she'd miss more than three days of work per month, could work only a few hours each day, and needed frequent breaks[5]—reflected those symptoms. None of the exam findings cited by

_____

[5] When describing the alleged inconsistencies with the record, the Commissioner conspicuously fails to mention these specific opinions. *See* ECF No. 30 at 12–14.

the ALJ appear to have tested Berryman's fatigue or ability to work when experiencing a fibromyalgia flare. Accordingly, Berryman has demonstrated that the ALJ failed to provide good reasons for assigning little weight to the opinions of her treating rheumatologist.

Though I agree with Berryman that the ALJ erred in weighing Dr. Mahmood's opinions, I do not share her belief that this error entitles her to an award of benefits. "When a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge. In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018).

This is not one of those unusual cases. Dr. Mahmood confirmed that Berryman demonstrated at least eleven of the eighteen tender points used to diagnose fibromyalgia. *See* R. 983–85. Thus, his opinions are well-supported by medical findings. *See Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."); *see also Gebauer v. Saul*, 801 F. App'x 404, 409 (7th Cir. 2020) (finding that ALJ wrongly discounted treating source's "opinions as not being supported by medically acceptable tests, given the absence of such evidence in fibromyalgia cases"). However, I am not convinced that there is no meaningful evidence inconsistent with Dr. Mahmood's opinions. In other words, it appears possible that the ALJ could identify valid reasons for giving Dr. Mahmood's opinions less than controlling or great weight. Remand therefore is the appropriate remedy.

## III.     Concentration, Persistence, or Pace

Finally, Berryman argues that the ALJ's RFC assessment does not reflect his finding at step three that Berryman had a moderate limitation in concentrating, persisting, or

maintaining pace. *See* ECF No. 20 at 24–25. I agree. "Though an RFC assessment need not recite the precise phrase 'concentration, persistence, or pace,' any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). Here, the RFC and hypothetical question posed to the vocational expert limited Berryman to "simple, routine and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional work place changes and occasional interaction with the public, coworkers and supervisors." R. 18, 68. It's unclear how any of those limitations accommodate Berryman's difficulties performing sustained work activities as a result of fibromyalgia- and anxiety-induced fatigue. *See Varga v. Colvin*, 794 F.3d 809, 814–15 (7th Cir. 2015) (rejecting substantially similar RFC and hypothetical).

The Commissioner maintains that the ALJ's mental RFC assessment is supported by substantial evidence because the ALJ reasonably relied on the state-agency psychologist's narrative translation. *See* ECF No. 30 at 24–26 (citing *Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010)). But while the ALJ assigned "great weight" to the opinion of Dr. Biscardi, the state-agency psychologist at the reconsideration level, *see* R. 22, he did not adopt all of Dr. Biscardi's findings. Dr. Biscardi explained that Berryman retained "the capacity to understand, remember, carry out and sustain performance of 1–3 step tasks (but would become overwhelmed if the procedures were more complicated)." R. 117, 133. The ALJ's RFC assessment limited Berryman to "simple, routine, and repetitive tasks." R. 18. Recently, the Seventh Circuit explained that "simple" instructions involve "at most two steps"; if "more than two steps" are required, the instructions are considered "complex," not simple. *Pavlicek*

*v. Saul*, Case No. 20-1809, 2021 U.S. App. LEXIS 10111, at *15 (7th Cir. Apr. 2021). Thus, it appears that the ALJ's limitation to simple tasks did not fully account for Berryman's capabilities, at least as opined by Dr. Biscardi. And the ALJ never asked the vocational expert how a limitation to complex tasks would affect her answers. *See* R. 63–73.

If this were the only error made by the ALJ, remand may not be warranted. However, given that remand already is required on other issues, the ALJ should also reconsider his mental RFC.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating the opinions of the state agency's examining psychologist and Berryman's treating rheumatologist. The record, however, does not require a finding of disability. Accordingly, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this <u>2nd</u> day of June, 2021.

STEPHEN C. DRIES
United States Magistrate Judge